UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------------------ X
AURELIUS CAPITAL PARTNERS, LP and AURELIUS  :
CAPITAL MASTER, LTD,                        :
            Plaintiffs/Garnishors,   :
v.                                          :
                                                          Case No. 09-21223-MC
REPUBLIC OF ARGENTINA,                      :  (Moreno)
           Defendant,               :
v.                                          :
BANK OF AMERICA, N.A.,                      :
           Garnishee.               :
------------------------------------------------------------------------ X

**MOTION TO DISSOLVE WRITS OF GARNISHMENT, OR IN THE ALTERNATIVE
TO STAY PROCEEDINGS, AND SUPPORTING MEMORANDUM OF LAW**

Richard H. Critchlow
Ismael Diaz
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, Florida 33131-4327

Jonathan I. Blackman
Carmine D. Boccuzzi
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006

Attorneys for the Republic of Argentina

Pursuant to Fed. R. Civ. P. 69(a) and Fla. Stat. §§ 77.07, Defendant the Republic of Argentina (the "Republic") denies that the accounts frozen by post-judgment writs of garnishment obtained by plaintiffs Aurelius Capital Partners, LP, Aurelius Capital Master, LTD and Blue Angel Capital I LLC on May 8 and May 11, 2009 (collectively, the "Writs") are subject to garnishment, and hereby moves this Court to dissolve the Writs, or in the alternative to stay these proceedings.[1] In support of this Motion, the Republic respectfully states the following:

## PRELIMINARY STATEMENT

Plaintiffs, vulture funds speculating in defaulted sovereign debt, are judgment creditors of the Republic. On May 6, 2009, plaintiffs registered their judgments in this Court, seeking to execute on funds that are not property of the Republic, and that under Argentine law may be used solely to pay pension benefits to millions of Argentine workers and retirees.

On May 8 and May 11, 2009, without effecting proper service of process on the Republic, plaintiffs obtained improper ex parte post-judgment writs of garnishment directed against alleged property of the Republic in the possession of Bank of America, N.A. Two of the Writs were issued by the deputy clerk of the Court, despite the fact that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 et seq., requires that writs of garnishment issued against a foreign state be expressly approved by

---

[1] Plaintiffs filed three separate (but substantively identical) enforcement actions against the Republic in the Southern District of Florida, which correspond to the three separate actions in New York in which plaintiffs obtained their judgments. See Aurelius Capital Partners, LP et al. v. Republic of Argentina, 09-21223-MC (Moreno, J.); Aurelius Capital Partners, LP et al. v. Republic of Argentina, 09-21224-MC (Ungaro, J.); and Blue Angel Capital I LLC v. Republic of Argentina, 09-21225-MC (Cooke, J.). For ease of reference, all of the Writs and underlying actions are treated together in this Motion, which is being filed in all three cases.

the Court, and not by a clerk. Bank of America filed an Answer the Writs on May 21, 2009, disclosing that it had frozen five accounts in the names of UNIDOS SA AFJP FONDO TIPO III, PROFESION AUGE TIPO 3, PREVISOL AFJP SA, PREVISOL AFJP SA FONDO (collectively, the "AFJPs") and Banco de la Nación Argentina ("BNA"). The AFJPs are private entities that until recently administered Argentina's pension system, and BNA is the largest commercial bank in Argentina. Plaintiffs' Writs do not identify entities whose accounts should be garnished to satisfy plaintiffs' judgments against the Republic, and no accounts in the name of the Republic were garnished.

Plaintiffs' Writs should be dissolved for the following reasons:

First, plaintiffs have failed to properly serve the Republic of Argentina with process in these garnishment proceedings in accordance with the method expressly required by the FSIA. See 28 U.S.C. § 1608. In the absence of proper service of process on the Republic, the Court lacked jurisdiction to issue Writs purporting to restrain property of the Republic.

Second, plaintiffs did not comply with Fla. Stat. § 77.055, which expressly requires a garnishor to serve a copy of the garnishee's answer on the defendant and any other person with a disclosed ownership interest in the garnished funds within 5 days after receiving the garnishee's answer. Here, plaintiffs did not serve a copy of the Answer on the Republic within five days of receiving it, and apparently still have not served a copy of the Answer on the interested non-parties, i.e., the AFJPs and ANSES. The Writs are therefore ineffective and should be dissolved. See, e.g., Cruise Control, Inc. v. Tyler, 577 So. 2d 709, 710 (Fla. Dist. Ct. App. 1991).

2

<u>Third</u>, two of the Writs were improper and must be dissolved, as they were entered by a deputy clerk. Under the FSIA, only a "court" – as opposed to a clerk – may restrain a foreign sovereign's assets. 28 U.S.C. § 1610(c); H.R. Rep. No. 94-1487, at 30 (1976).

<u>Finally</u>, even if these proceedings are not immediately dismissed and the Writs dissolved, the proceedings should be stayed in light of parallel litigation in the Southern District of New York (Griesa, J.) and the Court of Appeals for the Second Circuit. The Orders of Judge Griesa, which plaintiffs attached to their Motions for Writs of Garnishment and upon which plaintiffs purportedly rely in seeking the garnishments, expressly prohibit plaintiffs from seizing AFJP accounts until further order of the court. <u>See e.g.</u>, Plaintiffs' Motions for Writ of Garnishment, dated May 6, 2009, attaching Order of March 4, 2009 in <u>Aurelius Capital Partners, LP v. Republic of Argentina</u>, 07 Civ. 2715 (S.D.N.Y.) (TPG); <u>see also</u> Ex. A, Declaration of Ismael Diaz, dated June 10, 2009 (the "Diaz Decl.") Ex. 1 (March 4, 2009 Order, page 6: "The Writs of Execution may be served, but no property may be seized except upon further order of the court.").[2] Plaintiffs should not be permitted to evade this ruling by continuing proceedings here.

In addition, the issue whether the AFJP accounts can be garnished to satisfy debts of the Republic is the very issue currently pending before the Second Circuit. Plaintiffs have consented to an expedited schedule for this appeal, which is currently <u>sub judice</u> following oral argument on May 11, 2009. <u>See Aurelius Capital Partners, LP v. Republic of Argentina</u>, 08-5621-cv(L) (2d Cir.). It would be an inefficient use of this Court's resources to decide issues already before the Second Circuit

---

[2] For ease of reference, all numbered exhibits in this memorandum refer to exhibits to the Diaz Declaration.

3

and being litigated by these very parties. Accordingly, further action here should be stayed pending the decision by the Court of Appeals.

## STATEMENT OF FACTS

### A. The Argentine Financial Crisis And Plaintiffs' Judgments

Beginning in 1998, the Republic experienced "the worst economic crisis in its history," suffering a cumulative fall in output almost twice that experienced by the United States during the Great Depression. Lightwater Corp. v. Republic of Argentina, No. 02 Civ. 3804 (TPG), 2003 WL 1878420, at *2 (S.D.N.Y. Apr. 14, 2003). While the gross domestic product fell, unemployment and poverty reached record levels. By December 2001, the Republic was forced to suspend payments of interest and principal on public external debt in the wake of widespread riots that culminated in the resignations of the Republic's president and his entire cabinet. See John B. Taylor, Global Financial Warriors 89 (2007). In 2005, after its economy and political climate had stabilized, the Republic restructured the lion's share of its unsustainable debt in the largest sovereign debt restructuring ever, with over 76% of bondholders tendering approximately $62.3 billion in principal amount of old, non-performing bonds for new, performing bonds. See The World Bank, Global Development Finance 2006 73-74 (2006).

Plaintiffs are vulture funds who make a practice of buying distressed sovereign debt. Their business strategy turns on the fact that insolvent states cannot invoke bankruptcy protection: they buy sovereign debt at a deep discount because it is near default or already in default, and then take advantage of the absence of bankruptcy protection to bring lawsuits, obtain judgments on which interest continues to run indefinitely, and try to execute on them. None of these tactics would be available against

insolvent private debtors, who would be shielded from suit, judgments, accrual of post-bankruptcy interest and execution by the protections afforded by bankruptcy laws.

Following this business strategy, plaintiffs acquired beneficial interests in Republic bonds between 2006-2007 (i.e., years after the Republic had already defaulted on those bonds). See Ex. 2. Plaintiff Aurelius Capital Partners, LP obtained judgments against the Republic on April 25 and June 13, 2008 in the amounts of $112,848,024 and $70,456,464 respectively. See Ex. 3. Aurelius Capital Master, Ltd. similarly obtained judgments against the Republic on April 25 and June 13, 2008 in the amounts of $82,946,183 and $58,084,131, respectively. Id. Plaintiff Blue Angel Capital I LLC obtained a judgment against the Republic on April 25, 2008 in the amount of $229,654,415. Id.

**B.     The Argentine Pension System And Plaintiffs' Related Litigation In New York**

   **1.     The Argentine Pension System**

The Argentine Constitution requires the Republic to provide "the benefits of social security" through "compulsory social insurance" administered by "national or provincial entities with financial and economic autonomy." Aurelius Capital Partners, LP v. Republic of Argentina, No. 07 Civ. 2715, 2009 WL 755231, at *4 (S.D.N.Y. Mar. 12, 2009),[3] appeal docketed, 08-5621-cv(L) (2d Cir. Nov. 19, 2008). Since 1904, pension benefits for Argentine workers and retirees have been administered through various public entities. See Aurelius, 2009 WL 755231, at *4. In 1991, a unified public

---

[3]     The New York District Court initially issued its decision on December 11, 2008. See Aurelius, 2008 WL 5203732. The decision was amended on March 12, 2009 to correct a clerical error. See Aurelius, 2009 WL 755231. Plaintiffs attached the original December 11 decision, as opposed to the amended version, to their Motions for Writs of Garnishment. The Republic cites to the amended version in this memorandum.

5

social security system known as the Distribution System was created. See id. Shortly thereafter, a decentralized agency or instrumentality of the Republic under the administrative sphere of the Labor and Social Security Ministry, ANSES, was created to administer the Distribution System. Id. ANSES "has the power to manage its own administration and finance, independent of the National Treasury." Id. Under Argentine law, "ANSES can enter into contracts, sue and be sued, and acquire assets in its own name. Argentine law also provides that ANSES assets cannot be attached and can only be used for payments to beneficiaries." Id.

In response to perceived economic inefficiencies of the public Distribution System, on September 23, 1993, the Argentine Congress created for the first time in the Republic's history a hybrid pension system known as the Retirement Integrated System (the "SIJP"). See id. Under the SIJP, workers could elect either to continue to participate in the public Distribution System or join the newly created system known as the Capitalization System, which would be privately managed. Id.

The Capitalization System was administered by private corporations, the AFJPs, in exchange for fees. Id. By law, the activities of the AFJPs were limited to administering retirement and pension funds (the "FJPs") and providing the payments and benefits due to pensioners. Id. at *5. Law 24,241 expressly provides that the AFJPs did not have any property rights over assets in the FJPs (including the individual AFJP accounts), that the FJPs could be used only to generate social security benefits, and that assets in the FJPs were not subject to attachment by the AFJPs' creditors. Id.; see also Ex. 4, arts. 14, 59, 82.

The Capitalization System, which represented a shift away from the traditional system under which the pension regime was managed by the public sector to one managed in part by the private sector, did not perform as well as had been anticipated. The AFJPs charged costly fees, and the Republic remained legally responsible for ensuring minimum benefits upon retirement. See Ex. 4, art. 67. The commissions charged by the AFJPs were estimated to be a substantial portion of the total amount collected from participants of the Capitalization System. During the year September 2007 to September 2008, as the current worldwide financial crisis developed, the AFJPs incurred substantial losses.

On October 21, 2008, a bill was introduced in the Argentine Lower House proposing the reunification of the social security system. Aurelius, 2009 WL 755231, at *7. The bill was intended to address the Capitalization System's poor performance, budgetary shortfalls and the high fees charged by the AFJPs, and to promote local investment and liquidity in the Republic's economy in response to the same global financial crisis that approximately two and one-half weeks earlier had compelled the U.S. Congress to pass the Emergency Economic Stabilization Act of 2008 (the "Proposed Legislation"). The Proposed Legislation provided that assets in the Capitalization System would be transferred in kind to a fund under ANSES's management (the "Guarantee Fund"). See id. It affirmed that, in accordance with existing law, funds transferred to the Guarantee Fund would remain under the same limitation as under the Capitalization System – i.e., they could be used only to provide social security benefits. Id.

2. **The Proceedings in the Southern District of New York and the Second Circuit**

On October 29, 2008, before the Proposed Legislation even became law, plaintiffs obtained by <u>ex parte</u> order to show cause in the Southern District of New York writs of execution and restraining notices (the "October 29 Orders") with respect to what they described as any property of ANSES and/or the AFJPs located in the United States.[4] <u>See</u> Ex. 7. Neither ANSES nor the AFJPs has ever been a party in plaintiffs' actions against the Republic, and (as here) they were not served with process when the district court issued restraints and writs of execution against property in their possession. Judge Griesa upheld the validity of the October 29 Orders with respect to property in New York in <u>Aurelius</u>, 2009 WL 755231. However, Judge Griesa did <u>not</u> permit plaintiffs to execute against the frozen accounts pending further order of the court. <u>See, e.g.</u>, Ex. 1, at 6. Judge Griesa's order in <u>Aurelius</u> – which has been appealed to the Second Circuit, with oral argument heard on May 11, 2009 – is the purported basis for the Writs at issue here.

**C.      Plaintiffs' Improper Writs Of Garnishment In Florida**

On May 6, 2009, plaintiffs filed the present post-judgment garnishment proceedings in the Southern District of Florida, seeking to garnish property that under Argentine law may be used solely to pay pension benefits to millions of Argentine

---

[4]    On December 9, 2008, the Proposed Legislation became Law 26,425 (the "New Law"). <u>See</u> Ex. 5. The New Law mirrors the Proposed Legislation. Specifically, it requires that the majority of social security funds previously administered by the AFJPs be transferred in kind for administration by ANSES in Argentina. <u>Id.</u>, art. 7. Consistent with existing Argentine law, it affirms that funds managed by ANSES, and in particular the resources in the Guarantee Fund, "may only be employed to make payments in the Argentine Integrated Pension System." <u>Id.</u>, art. 8. Likewise, the implementing decrees recognize that assets contributed to the social security system may be used only to pay benefits to contributing workers and pensioners. Ex. 6, art. 5; <u>see also</u> preamble ("...Assets [are] specifically assigned for the sole purpose of the payment of benefits of the mentioned System."). Despite the enactment of the New Law, the funds managed by the AFJPs have not actually transferred to ANSES due to the restraining orders obtained by plaintiffs in New York on October 29, 2008.

workers and retirees. Plaintiffs did not comply with Local Rule 3.9 in filing these actions. Local Rule 3.9D requires a plaintiff to "bring promptly to the attention of the Court and opposing counsel the existence of other actions or proceedings [in the Southern District of Florida], as well as the existence of any similar actions or proceedings then pending before another court or administrative agency." As a result of plaintiffs' non-compliance with the local rule, each of plaintiffs' identical applications was assigned to a different judge of this Court.

On May 8 and May 11, 2009, plaintiffs obtained three separate ex parte writs of garnishment, one for each action filed in Florida. The two writs obtained on May 8, 2009 (the "May 8 Writs") were issued by the deputy clerk of the Court and not by a judge.[5] See Ex. 8. Each of the three Writs was directed at Bank of America, and sought to garnish alleged property of the Republic. Id.

Plaintiffs purported to serve the Republic with copies of the Motions For Post-Judgment Writs Of Garnishment and the Writs of Garnishment on May 15, 2009 by sending untranslated copies of the papers to certain Republic officials and "c/o Banco de la Nación Argentina" via first-class mail. See Ex. 9.

Bank of America served its Answer to the Writs on plaintiffs on May 21, 2009. See Ex. 10. The Answer disclosed that five accounts had been frozen, four in the name of certain AFJPs and one in the name of BNA.[6] See id. ¶ 1. No accounts in the

---

[5] The deputy clerk of the Court issued the writs of garnishment in Aurelius Capital Partners, LP et al. v. Republic of Argentina, 09-21223 and Blue Angel Capital I LLC v. Republic of Argentina, 09-21225.

[6] BNA filed a Motion to Dissolve Writ of Garnishment in this action on June 5, 2009.

name of the Republic were frozen. Plaintiffs untimely mailed copies of the Answer to the Republic on June 3, 2009 (i.e., days after the required service date). See Ex. 11.

## ARGUMENT

## POINT I

### THE COURT MUST DISSOLVE THE WRITS BECAUSE PLAINTIFFS HAVE FAILED TO PROPERLY SERVE THE REPUBLIC WITH PROCESS

Federal Rule of Civil Procedure 69 governs proceedings to enforce money judgments. See Fed. R. Civ. P. 69(a). Federal Rule 69(a)(1) provides that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Id. (emphasis added).

Accordingly, these enforcement proceedings must accord with Florida garnishment law, but only to the extent that Florida law does not conflict with the procedures set forth in the FSIA – including 28 U.S.C. § 1608(a), which sets forth the exclusive means for service of process on a foreign state.[7] See, e.g., Magness v. Russian Fed'n, 247 F.3d 609, 615 (5th Cir. 2001) ("We conclude that the provisions for service of process upon a foreign state or political subdivision of a foreign state outlined in section 1608(a) can only be satisfied by strict compliance."); Gray v. Permanent Mission of People's Republic of Congo to United Nations, 443 F. Supp. 816, 821-22 (S.D.N.Y. 1978) ("informal notification through channels clearly outside the obvious requirements of the applicable statute cannot be substituted for those which meet the requirements"),

---

[7]   Under Florida law, "[a]lthough a garnishment proceeding is ancillary or collateral to the main action establishing the debt, a garnishment proceeding, like an attachment proceeding, is separate and distinct from the main action." Space Coast Credit Union v. the First, F.A., 467 So. 2d 737, 739 (Fla. Dist. Ct. App. 1985). The Florida garnishment statute provides that a motion for writ of garnishment and the writ must be served on the defendant by "first class mail." See Fla. Stat. § 77.041(2). Here, since the defendant is a foreign sovereign, the FSIA service rules, 28 U.S.C. § 1608(a), govern in lieu of this state procedure, rendering service by first class mail inadequate.

10

aff'd, 580 F.2d 1044 (2d Cir. 1978); Hanil Bank v. P.T. Bank Negara Indonesia (Persero), No. 96 Civ. 3201 (JFK), 1997 WL 411465, at *4 (S.D.N.Y. July 18, 1997) ("Section 1608 of the FSIA delineates the exclusive means for effecting service of process upon a foreign state."); Robinson v. Gov't of Malaysia, 664 N.Y.S.2d 907, 909 (Sup. Ct. N.Y. County 1997) ("The United States has set up a national statutory scheme for service of process on foreign governments . . . Neither a state nor an individual may choose a different method for service of process on a foreign state where the United States has already mandated the manner of service."). Strict compliance with service requirements for foreign states under Section 1608(a) is required. Because plaintiffs have failed to properly serve the Republic of Argentina with process under the FSIA, this Court lacks jurisdiction over the Republic, and the Writs must be dissolved.

Plaintiffs purported to serve the Republic with the Motions for Post-Judgment Writs of Garnishment and the Writs of Garnishment – the documents which initiated these new enforcement proceedings in Florida – by mailing papers to officials in Argentina. This was not proper under the FSIA. Section 1608(a)(2) of the FSIA states that, "if no special arrangement exists," service upon a foreign state must be made "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). The applicable international conventions in this instance are the Inter-American Convention on Letters Rogatory (the "Inter-American Convention"), see Ex. 12, and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), see Ex. 13, to which the Republic and the United States are signatories. Plaintiffs have made no effort to comply with either the Inter-American Convention or the Hague

11

Convention. See Ex. 9. Indeed, they have not even taken the required step of having the papers translated. See Ex. 12, art. 5(b); Ex. 14. The Court therefore cannot assert jurisdiction over the Republic in these cases, and it should dissolve the Writs.

Plaintiffs also mailed purported service to BNA's New York branch. BNA is not an authorized agent for service of process in these proceedings. BNA's role as an agent for service of process is expressly limited to actions "arising out of or based on the Securities or this Agreement by the holder of any Security <u>which may be instituted in any state or federal court in the City of New York</u>." Ex. 15 (emphasis added). Thus, service on BNA does not constitute sufficient service of process in these proceedings instituted outside of New York.[8]

## POINT II

## PLAINTIFFS' WRITS MUST BE DISSOLVED BECAUSE PLAINTIFFS FAILED TO COMPLY WITH FLA. STAT. § 77.055

Plaintiffs' Writs also should be dissolved because plaintiffs failed to comply with Fla. Stat. § 77.055. Within 5 days of service of a garnishee's answer to a writ of garnishment, the plaintiff is required to serve the answer on the defendant as well as "on any other person disclosed in the garnishee's answer to have any ownership interest in the . . . property controlled by the garnishee."[9] Fla. Stat. § 77.055. A certificate of such service must be filed with the court. Id. The garnishor must also

---

[8] The FAA and plaintiffs' bonds do not designate an agent, or contain any other "special arrangement," for service of process on the Republic for proceedings brought outside of New York, including enforcement actions. Accordingly, service under Section 1608(a)(1) is inapplicable here.

[9] The requirement of service of the garnishee's answer is separate from the additional (and preliminary) requirement that a garnishor serve the defendant with a copy of the writ of garnishment and the motion for writ of garnishment. See Fla. Stat. § 77.041(2); see also 28 U.S.C. § 1608(a)(2).

12

notify all interested parties of their right to move to dissolve the writ of garnishment within twenty days of such service. Id. Failure to comply with these requirements is cause to dissolve a writ of garnishment. See, e.g., Cruise Control, Inc. v. Tyler, 577 So.2d 709, 710 (Fla. Dist. Ct. App. 1991) (reversing final judgment of garnishment "because the appellee as garnishor failed to provide the defendant . . . with the notice required by section 77.055"); T-Jett Enterprises, Inc. v. Ernest and Stewart, Inc., 543 So.2d 390, 391 (Fla. Dist. Ct. App. 1989) ("failure to comply with the requirements of section 77.055 . . . and properly notify the seller of the garnishment proceedings, would be sufficient basis alone for reversing the garnishment order"); Rudd v. First Union Nat'l Bank of Florida, 761 So.2d 1189, 1192 (Fla. Dist. Ct. App. 2000) ("[Defendant]'s right to properly move to dissolve the writ under section 77.07(2) could not be triggered where [garnishor] failed to comply with the notice provision set forth in section 77.055. Where a garnishor fails to give notice of the writ as required under section 77.055, a debtor could be foreclosed from using the statute and exercising his right to move to dissolve the writ . . . ."); Great Am. Ins. Co. v. Gen. Contractors & Const. Mgm't, No. 07-21489-civ, 2008 WL 5056526, at *5 (S.D. Fla. Nov. 21, 2008) (where plaintiff did not comply with timing requirements of garnishment proceeding, "it is manifest that the writs of garnishment are dissolved by operation of law").

  Plaintiffs were required to serve the Republic, the AFJPs and ANSES with Bank of America's Answer by June 1, 2009. However, they did not try to serve the Answer on the Republic until June 3, 2009, see Ex. 11, and they apparently have never attempted to serve it on the interested non-parties the AFJPs or ANSES. The Writs should be dissolved on this basis alone.

13

## POINT III

## TWO OF THE WRITS SHOULD BE DISSOLVED ON THE BASIS THAT PLAINTIFFS UNLAWFULLY OBTAINED THEM FROM THE DEPUTY CLERK OF THE COURT

In filing these actions in Florida, plaintiffs failed to comply with Local Rule 3.9D, which requires that plaintiffs identify whether related litigation is pending in the Southern District of Florida. By proceeding with three identical actions before three separate judges in this district, plaintiffs are engaging in the "universally condemned practice of judge shopping," which "interferes with the orderly administration of justice and mandates dismissal with prejudice." Disability Advocates and Counseling Group v. Betancourt, 379 F. Supp. 2d 1343, 1365 (S.D. Fla. 2005). Plaintiffs' failure to designate the cases as related has already resulted in inconsistencies, including the fact that two of the three Writs obtained by plaintiffs are invalid on their face.

Under the FSIA, before garnishing a foreign sovereign's property, a "court" (not a clerk) must make a preliminary determination that the property falls within one of the statutory exceptions to the FSIA. 28 U.S.C. § 1610(c); H.R. Rep. No. 94-1487, at 6629 (1976) ("In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or to a local sheriff. This would not afford sufficient protection to a foreign state. This subsection contemplates that the courts will exercise their discretion in permitting execution."). This requirement arises from the fact that a judge must preliminarily "determine whether the property in question falls within one of the statutory exceptions to foreign sovereign immunity" before ordering garnishment or execution. Conn. Bank of Commerce v. Republic of Congo, 309 F.3d 240, 247 (5th Cir. 2002).

14

Because plaintiffs obtained two of their Writs from the deputy clerk of the court, and because there has been no preliminary determination by this Court that the frozen accounts fall within one of the exceptions to the FSIA, the Writs are improper and must be dissolved. See FG Hemisphere Assocs., LLC v. République du Congo, 455 F.3d 575, 594 (5th Cir. 2006) ("Prior to issuing a garnishment order, a district court must make factual findings that support application of the § 1610(a) exception to executional immunity during the situs snapshot for *each* form of property."); Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277, 1286 n.21 (11th Cir. 1999).

## POINT IV

### IN THE ALTERNATIVE, THIS COURT SHOULD STAY THESE PROCEEDINGS BECAUSE WHETHER THE AFJP ACCOUNTS MAY BE GARNISHED IS ALREADY SUBJECT TO LITIGATION IN THE SECOND CIRCUIT AND THE SOUTHERN DISTRICT OF NEW YORK

In the event the Court does not dissolve the Writs, it should stay these proceedings in light of the parallel proceedings before the New York district court and the Second Circuit Court of Appeals. Judge Griesa has expressly prohibited plaintiffs from actually executing against the AFJP accounts until he issues further orders, see Ex. 1; Aurelius, 2009 WL 755231, at *16, and plaintiffs should be entitled to no more here. See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast Dist. of the ILA; AFL-CIO, 751 F.2d 721, 728 (5th Cir. 1985) ("The federal courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs.").

Furthermore, any further action by this Court would be duplicative of the proceedings in New York, including the appeal sub judice before the Second Circuit

15

following oral argument on May 11, 2009.  See Aurelius, 08-5621-cv(L) (2d Cir.).  This Court should exercise its broad discretion to stay these proceedings in order to avoid such duplication.  See, e.g., Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (as between federal district courts, . . . the general principle is to avoid duplicative litigation."); Innovative Patented Tech., LLC v. Samsung Elec. Co., No. 07-81148-cv, 2008 WL 2726914, at *1 (S.D. Fla. July 10, 2008); St. Paul Fire & Marine Ins. Co. v. Christensen Shipyards, Ltd., No. 06-21133-cv, 2006 WL 2582994, at *3 (S.D. Fla. Aug. 28, 2006).

The issues raised by the Writs here and currently pending before the Second Circuit include that the AFJP accounts cannot be seized to satisfy debts of the Republic, because the AFJPs are undisputedly private and legally separate entities.  See Aurelius, 2009 WL 755231, at *11 (AFJPs "are still separate entities"; the FJPs "were established as private pension funds and the AFJPs were established to administer these private pension funds").  The fact that Argentine law requires the transfer of administrative responsibilities over the AFJP accounts to ANSES does not alter the conclusion that the Republic has no property interest in such accounts.  Like the AFJPs, under Argentine law ANSES is legally separate from the Republic, and its own assets, much less assets it manages for the benefit of social security participants, cannot be reached to pay the debts of the Republic.  ANSES is a "typical government instrumentality" entitled to immunity and a presumption of separateness under the FSIA.  See First National City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec"), 462 U.S. 611, 624 (1983); 28 U.S.C. § 1609.

The Second Circuit is also currently considering the issue that property managed by ANSES and/or the AFJPs is explicitly mandated by law only to be "used for" providing a mandatory social security system to protect and promote the social welfare of the Argentine public, a paradigmatic sovereign activity that is inherently not commercial. On that ground alone, plaintiffs are precluded under the FSIA from executing upon those social security assets. 28 U.S.C. § 1610(a) (authorizing execution against property of a foreign state located in the United States *only* if the property is "used for a commercial activity in the United States"); Conn. Bank, 309 F.3d at 251 ("Under the FSIA, courts may attach only a foreign state's 'property in the United States' when that property is '*used for* a commercial activity in the United States.'") (emphasis in original).

## CONCLUSION

For the foregoing reasons, the plaintiffs' Writs should be dissolved. In the alternative, the proceedings should be stayed pending resolution of these issues in related parallel litigation in New York.

Dated: Miami, Florida
       June 23, 2009

                                    Respectfully submitted,

                                    s/Ismael Diaz
                                    Richard H. Critchlow (Fla. Bar No. 155227)
                                    Ismael Diaz (Fla. Bar No. 575771)
                                    KENNY NACHWALTER, P.A.
                                    201 South Biscayne Boulevard
                                    1100 Miami Center
                                    Miami, Florida 33131-4327
                                    Telephone: (305) 373-1000
                                    Facsimile: (305) 372-1861
                                    *Attorneys for Defendant*
                                    *The Republic of Argentina*

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

## CERTIFICATE OF SERVICE

**I certify** that on June 23, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                    s/Ismael Diaz

## SERVICE LIST

*Aurelius Capital Partners, etc. et al. v. Republic of Agentina, etc.*
Case No. 09-21223-MC (Moreno/Torres)
United States District Court, Southern District of Florida

William K. Hill, Esq.
Bilzin Sumberg Baena Price
 & Axelrod, LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida  33131
*Attorneys for Plaintiffs*
*Via CM/ECF*

Juan A. Gonzalez, Esq.
Frank P. Cuneo, Esq.
Liebler, Gonzalez & Portuondo, P.A.
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, Florida  33130
*Attorneys for Bank of America, N.A.*
*Via CM/ECF*

Clinton Richard Losego, Esq.
Gunster Yoakley & Stewart, P.A.
2 South Biscayne Boulevard, Suite 3400
Miami, Florida  33131
*Attorneys for Banco de la Nacion Argentina*
*Via CM/ECF*